**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KAI BANDELE, individually and )<br>on behalf of others similarly situated, )<br> )<br> PLAINTIFF, )<br> )<br> v. )<br> )<br>THE WIRBICKI LAW GROUP LLC, )<br>and BAYVIEW LOAN SERVICING, LLC, )<br> )<br> )<br> DEFENDANTS. ) | Civil Action No.<br><br>Jury Demanded |

## CLASS ACTION AND INDIVIDUAL COMPLAINT

Plaintiff, Kai Bandele, individually and on behalf of a putative class, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2.      Venue is proper in this District because Defendants transact substantial business here.

### PARTIES

3.      Plaintiff, Kai Bandele, ("Plaintiff") is a resident of the State of Illinois, from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted mortgage loan incurred for her home and personal residence, located at 7639 South Langley Avenue, Chicago, Il 60619, and thus the loan was incurred for personal, family and

1

household purposes ("alleged debt"). Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

4.    Defendant, The Wirbicki Law Group LLC, ("Wirbicki") is an Illinois LLC that acts as a debt collector, as defined by § 1692a(6) of the FDCPA, because it regularly uses litigation, the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts on behalf of others.

5.    Wirbicki maintains a website, www.wirbickilaw.com, that reads in part as follows:

**Services**

**The Wirbicki Law Group is a creditor's rights law firm. Our experienced litigation team has the ability to work through contested foreclosure and other real estate transactional litigation. The firm has been staffed to assure that the client receives adequate feedback on the process. By utilizing state of the art technology, we minimize the delays and costs of cumbersome paper only systems. Our goal is to deliver a continuously high quality product, and communicate information to the client and other parties in a timely and cohesive manner.**

Wirbicki Law Group LLC's website, http://www.wirbickilaw.com/about.html, 16 March, 2020.

6.    Wirbicki's website states that it maintains an office in Chicago, Illinois.

7.    Most of Wirbicki's income is derived from the collection of defaulted residential consumer foreclosure debts, including via letter, telephone and litigation.

8.    Wirbicki identifies itself as a debt collector in the correspondence it transmitted to Plaintiff, as further described below.

9.    Defendant, Bayview Loan Servicing, LLC, ("Bayview") is a corporation that acts as a mortgage servicer, and also as debt collector, as defined by § 1692a(6) of the FDCPA,

because it regularly uses litigation, the mail and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts on behalf of others.

10.    Bayview identifies itself as a debt collector on communications it mailed to Plaintiff.

11.    Bayview began servicing the alleged debt after default.

## STANDING

12.    Plaintiff has standing because she has suffered an injury-in-fact as the result of Defendant's actions. Specifically, Wirbicki has misrepresented the amount of the alleged debt by stating late charges are due and owing, which is enough to establish Article III standing despite the fact that she never paid the illegal amounts sought. *See*, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 593-594 (7th Cir. 1998).

13.    Because Defendants' misrepresentations and omissions, stated below, deprived Plaintiffs of accurate material information that posed a risk of real harm, they satisfy the concrete-harm requirement. See, e.g., *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258, at *14-16 (N.D. Ill. July 11, 2016); See also *Aguirre v. Absolute Resolutions Corp.*, No. 15 C 11111, 2017 U.S. Dist. LEXIS 159107, at *12 (N.D. Ill. Sep. 27, 2017).

## FACTUAL ALLEGATIONS

14.    Plaintiff incurred a consumer debt alleged to be owed for a mortgage loan taken out in connection with the purchase of her home and personal residence, located at 7639 South Langley Avenue, Chicago, Il 60619, and thus the loan was incurred for personal, family and household purposes ("alleged debt"). The alleged debt is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

3

15.     Bayview alleged to have purchased and/or obtained the alleged debt from the previous creditor, after Plaintiff was alleged to have defaulted on the note underlying the alleged debt.

16.     Bayview thereafter hired Wirbicki to collect the alleged debt.

17.     On or around May 3, 2018, Wirbicki, on behalf of Bayview, filed a "Complaint to Foreclose Mortgage" titled *Bayview Loan Servicing, LLC v. Kai A. Bandele et al,* Case No. 18CH05770, in the Circuit Court of Cook County, Illinois ("Foreclosure Action").

18.     On November 28, 2018, Plaintiff's attorney, the Property Law Group, LLC, entered an appearance in the Foreclosure Action.

19.     The Property Law Group, LLC thereafter forwarded an appearance in the Foreclosure Action to Wirbicki via US Mail, which Wirbicki received either electronically on November 28, 2018, or via mail on or before December 1, 2018.

20.     Wirbicki and Bayview were both thereafter aware the Plaintiff was represented by an attorney as to the alleged debt, whose name and address Wirbicki and Bayview were aware of.

21.     Despite this fact, on or about July 15, 2019, Wirbicki directly mailed Plaintiff a letter ("First Letter") indicating *inter alia* that Plaintiff owes $144,931.44 to Bayview. (Exhibit A, First Letter).

22.     Wirbicki mailed the First Letter to Plaintiff directly, instead of to her attorney the Property Law Group, LLC.

23.     The First Letter references the Foreclosure Action.

24.     The First Letter was sent in connection with the collection of the alleged debt, and is a "communication" as that term is understood and defined in the FDCPA.

4

25.     It is a violation of the FDCPA to send a collection letter to a consumer when a debt collector knows that a consumer is represented by an attorney. See 15 U.S.C. § 1692c(a)(2). *Gagnon v. JPMorgan Chase Bank, N.A.*, 563 B.R. 835, 842 (N.D. Ill. 2017).

26.     Defendants were required to cease communicating with Plaintiff after they became aware that Plaintiff was represented by an attorney as to the alleged debt, under the provisions of 15 U.S.C. §1692c.

27.     Despite the FDCPA's proscription regarding continued contacts with Plaintiff after Defendants became aware that Plaintiff was represented by counsel with respect to the alleged debt, Defendants continued to communicate with Plaintiff directly in their attempts to collect the alleged debt from him, for purposes other than those allowed under 15 U.S.C. § 1692c(c)(1)-(3), and Defendants have violated 15 U.S.C. §1692c(a)(2) thereby each time they have done so.

28.     The Letter states in part that "…this law firm is deemed to be a debt collector attempting to collect a debt."

29.     The amount of $144,931.44 sought from Plaintiff in the First Letter represented an acceleration of all amounts due from Plaintiff with respect to the subject loan.

30.     The First Letter includes a page titled "PAY OFF BREAKDOWN".

31.     The "PAY OFF BREAKDOWN" has a line item for "late charges", stating that $451.50 in late charges are due.

32.     The First Letter indicates that the "…amounts contained herein have already been incurred."

33.     The First Letter does not purport to provide a reinstatement balance.

34.     Plaintiff did not seek reinstatement of the note and mortgage at issue, nor did she reinstate the note and mortgage at issue, prior to the date the First Letter was mailed.

35.     Defendants' imposition of late charges that it sought to collect in the First Letter is thus false, as late charges cannot be imposed where the loan has been accelerated and no reinstatement is in effect. (See, *i.e.*, *Rodriguez v. Codilis & Assocs., P.C.*, No. 17-cv-03656, 2018 U.S. Dist. LEXIS 54898, at *11 (N.D. Ill. Mar. 30, 2018) ("As Rodriguez points out, BSI cannot impose late charges for failure to make monthly payments after a loan has been accelerated; *Rizzo v. Pierce & Associates*, 351 F.3d 791, 793 n.1 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated").

36.     If Plaintiff did not reinstate her mortgage following acceleration, the late fees could not be charged. *See Wells Fargo Bank Minn. N.A. v. Guarnieri*, 308 B.R. 122, 128 (D. Conn. 2004) ("However, once the loan is accelerated, as was the case here, there are no further monthly payments due and the lender is therefore not required to incur administrative expense in handling late payments."); *Jackson v. Carrington Mortg. Servs.*, No. 17-60516-CIV, 2017 U.S. Dist. LEXIS 191932, at *9 (S.D. Fla. Nov. 16, 2017).

37.     Defendants' statement that late charges were due is false, confusing, deceptive and unfair, and violates sections 1692e and 1692f of the FDCPA, as the charges could not by law be imposed at the time the First Letter was mailed, and the threat of a higher balance due to late charges could influence an unsophisticated consumer's decision to pay the alleged debt.

38.     Plaintiff in fact thought that late charges could be imposed after reading the First Letter.

39.     The First Letter also states, in part:

"As of today, the amount necessary to pay off your loan in full good through July 31, 2019 is $144,931.44…"

40.     The First Letter further states, in part:

"However, it is likely that the amount necessary to pay off the loan on July 31, 2019 will be greater than this for a variety of reasons."

41.     The First Letter thus communicates that payment of $144,931.44 by July 31, 2019 both will, and won't, satisfy the alleged debt.

42.     The First Letter then goes on to state that "The information provided in this letter will be valid through 5:00 p.m. on July 31, 2019 and the amount may change if your payment is not received at the address below by that date and time."

43.     The statement that "The information provided in this letter will be valid through 5:00 p.m. on July 31, 2019 and the amount may change if your payment is not received at the address below by that date and time" implies that the amount will not change if payment is made by the date and time contained therein—contrary to the earlier statement that the amount due on July 31, 2019 will likely be greater than the amount stated.

44.     Plaintiff was confused by the First Letter, as it both assures Plaintiff that payment of an amount certain by a date certain will pay off the loan, while at the same time the First letter indicates that the payoff amount will "likely" be more than said amount certain.

45.     An unsophisticated consumer would not know the amount that would be required to pay off the loan, though Bayview was required to provide an accurate payoff amount.

46.     On or about December 2, 2019, Wirbicki mailed Plaintiff another letter ("Second Letter") indicating *inter alia* that Plaintiff owes $44,386.25 to Bayview. (Exhibit B, Second Letter).

47.     The Second Letter also states, in part:

"As of today, the amount necessary to reinstate your loan in full good through December 18,

2019 is $44,386.25…"

48.     The First Letter further states, in part:

"However, it is likely that the amount necessary to reinstate the loan on December 18, 2019 will

be greater than this for a variety of reasons."

49.     The First Letter thus communicates that payment of $44,386.25 by December 18,

2019 both will, and won't, reinstate the loan.

50.     The First Letter then goes on to state that "The information provided in this letter

will be valid through 5:00 p.m. on December 18, 2019 and the amount may change if your

payment is not received at the address below by that date and time."

51.     The statement that "The information provided in this letter will be valid through

5:00 p.m. on December 18, 2019 and the amount may change if your payment is not received

at the address below by that date and time" implies that the amount will *not* change if payment

is made by the date and time contained therein—contrary to the earlier statement that the

amount due on December 18, 2019 will likely be greater than the amount stated.

52.     Plaintiff was confused by the Second Letter, as it both assures Plaintiff that

payment of an amount certain by a date certain will reinstate the loan, while at the same time

the Second Letter indicates that the reinstatement amount will "likely" be more than said

amount certain—thus also communicating that it likely will not satisfy the conditions for

reinstatement.

8

53. An unsophisticated consumer would not know the amount that would be required to reinstate the loan, though Bayview was required to provide an accurate reinstatement amount.

54. The Second Letter contains a "REINSTATEMENT BREAKDOWN".

55. The "REINSTATEMENT BREAKDOWN" has a line item for "late charges", stating that $391.30 in late charges are due.

56. The First Letter, however, indicated that $451.50 in late charges were due.

57. Either the amount of late charges in the First Letter is incorrect, or the amount of late charges in the Second Letter is incorrect—both cannot be correct, and at least one amount is wrong.

58. Defendants' collection communications and activities are to be interpreted under the "unsophisticated consumer" standard. *See Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

59. Defendant threatened to sell Plaintiff's home through a judicial sale in an attempt to collect her defaulted home loan.

60. Defendants' communications with Plaintiff, including via mail and via the act of filing and maintaining a foreclosure action that was served upon Plaintiff, constitutes debt collection. *See Bieber v. J. Peterman Legal Grp. Ltd.*, 104 F. Supp. 3d 972, 2015 U.S. Dist. LEXIS 63754, 2015 WL 2340354, at *2-4 (E.D. Wis. May 15, 2015) (foreclosure action that does not seek money judgment is debt collection under FDCPA); *Kabir v. Freedman Anselmo Lindberg LLC*, No. 14 C 1131, 2015 U.S. Dist. LEXIS 104299, at *10-11 (N.D. Ill. Aug. 10, 2015) (same); *Shahnaaz A.R. Khan v. OneWest Bank, F.S.B.*, No. 16 CV 8074, 2017 U.S. Dist. LEXIS 55691, at *22 (N.D. Ill. Apr. 12, 2017)(stating "Here, Azeem alleges that defendants

threatened to sell her home through a judicial sale in an attempt to collect Azeem's defaulted home loan. This sufficiently alleges that defendants acted in collecting on a debt under the FDCPA."); *Paulsen v. Peterman*, No. 14-cv-106-wmc, 2015 U.S. Dist. LEXIS 41429 (W.D. Wis. Mar. 31, 2015) (finding that initiation of foreclosure proceedings absent deficiency claim was an attempt to collect debt within scope of FDCPA's protection).

## CLASS COUNTS

### COUNT I—IMPERMISSIBLE THREAT OF LATE CHARGES

61.     Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

62.     Defendants cannot legally impose late charges for failure to make monthly payments after the loan has been accelerated, as in this case.  *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated").

63.     While a note may provide for a lender to collect late charges when an installment is not received by a due date, those installments are no longer "due" after the lender has accelerated the note and made demand upon the borrower.

64.     Defendants' threat that late fees will be imposed is deceptive, false and misleading, as late fees cannot be imposed in a case like this where the loan has been accelerated and no reinstatement is sought.

65.    Section 1692e of the FDCPA provides as follows:

**§ 1692e.  False or misleading misrepresentations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
**…**
**(2) The false representation of—**
**(A)  the character, amount, or legal status of any debt; or**
    **(B)  any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**
**…**
**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**
**…**
**(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

66.    Defendants violated §§ 1692e, e(2)(A), e(2)(B), e(5) and e(10) of the FDCPA when they made false, deceptive, and/or misleading representations in the connection with the collection of a debt.

67.    Defendants violated § 1692e and e(2)(A) of the FDCPA when they made false, deceptive, or misleading representations in communications mailed to Plaintiff as to the amount of debt owed by Plaintiff, as the amount could not legally include late fees, the amounts sought were inaccurate, and the threat to impose said fees was false.

68.    Defendants violated § 1692e(5) of the FDCPA by threatening to impose late fees when late fees could not legally be imposed, and/or when Bayview did not intend to impose late fees as the debt was accelerated and Plaintiff had not yet sought reinstatement.

69.    Defendants violated § 1692e(10) of the FDCPA by falsely and deceptively threatening to impose late fees in order to induce Plaintiff to pay a debt, when in fact such late fees were not legal, and could not be sought.

11

70.    Section 1692f of the FDCPA provides as follows:

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

71.    Defendants violated 1692f and f(1) by threatening and attempting to collect amounts from Plaintiff that were not authorized by the agreement creating the debt or permitted by law, namely a "late fee".

72.    The Letter contained in Exhibit A is a form letter.

73.    The Letter contained in Exhibit A, which threatens the imposition of late fees i) after a defaulted loan has been accelerated and ii) where reinstatement has not been sought, violates the FDCPA: while a note may provide for a lender to collect late charges when an installment is not received by a due date, those installments are no longer "due" after the lender has accelerated the note and made demand upon the borrower where the borrower had not sought reinstatement.

74.    Plaintiff brings this action individually and as a class action. The class consists of (a) all individuals (b) with addresses in Illinois (c) to whom Defendant Wirbicki, on behalf of Bayview, mailed a letter in the form of that contained in the attached Exhibit A, that sought to impose late charges after acceleration of a loan (d) where the amount sought in the letter reflects an acceleration of the indebtedness (e) where the borrower had not sought reinstatement of the loan, and (f) where the letter was mailed on or after July 13, 2019  and on or before July 13, 2020.

75.    The class members are so numerous that joinder of all is not practicable.

76.     Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

77.     The Class consists of more than 40 persons from whom Defendants attempted to collect delinquent consumer debts, by mailing the type of letter that was mailed to Plaintiff.

78.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, and a risk that any adjudications with respect to individual members of the Class would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests. Defendants have acted in a manner applicable to the Class as a whole such that declaratory relief is warranted.

79.     Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Defendants' conduct was perpetrated on all members of the Class and will be established by common proof.

80.     Plaintiff's counsel is experienced in FDCPA class action litigation.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class defined above, and against Defendants, for:

(1)  Statutory damages;

(2)  Attorney's fees, litigation expenses and costs of suit;

(3)  Such other and further relief as the Court deems proper.

## COUNT II—FAILURE TO PROPERLY COMMUNICATE PAYOFF AND REINSTATEMENT AMOUNTS

81.  Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

82.  Defendant Wirbicki, on behalf of Bayview, committed an unfair, deceptive, and/or unconscionable action by communicating to Plaintiff, in connection with the collection of a mortgage loan, that payment of a specific amount by a specific date both will, and likely will not, satisfy the payoff and reinstatement obligations by Plaintiff.

83.  The First and Second Letters confused Plaintiff, as Plaintiff did not know and could not glean whether payment of the amounts stated for payoff and reinstatement were correct, or not, and Plaintiff did not know whether, if she paid the amounts stated, Bayview would thereafter seek more money for pay

84.  The First and Second Letters would confuse an unsophisticated consumer, as she would not know and could not glean whether payment of the amounts stated for payoff and reinstatement were correct, or not, and an unsophisticated consumer would not know whether, if she paid the amounts stated, Bayview would thereafter seek more money for payoff or reinstatement.

85.  Defendants violated §§ 1692e and e(10) of the FDCPA when they made false, deceptive, and/or misleading representations in the connection with the collection of a

mortgage debt, by communicating to Plaintiff, in connection with the collection of a mortgage loan, that payment of a specific amount by a specific date both will, and likely will not, satisfy the payoff and reinstatement obligations by Plaintiff.

86. Defendants violated 1692f and f(1) by unfairly presenting payoff and reinstatement amounts and deadlines in a way that could not be understood by Plaintiff, and that would not be understood by the unsophisticated consumer.

87. The Letter contained in Exhibit A is a form letter.

88. The Letter contained in Exhibit B is a form letter.

89. Plaintiff brings this action individually and as a class action. The class consists of (a) all individuals (b) with addresses in Illinois (c) to whom Defendant Wirbicki, on behalf of Bayview, mailed letters in the form of those contained in the attached Exhibit A or Exhibit B, that sought to communicate payoff or reinstatement amounts (d) where the letter indicates that the information in said letter will be valid to a date certain and that the amount may change if payment is not received by Bayview at their address by a given date and time (e) but where the letter also indicates that the amount owed will likely be greater than that stated on the letter even if paid by said date certain (f) where the letter was mailed on or after July 13, 2019 and on or before July 13, 2020.

90. The class members are so numerous that joinder of all is not practicable.

91. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

92.     The Class consists of more than 40 persons from whom Defendants attempted to collect delinquent consumer debts, by mailing the type of letters that were mailed to Plaintiff.

93.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, and a risk that any adjudications with respect to individual members of the Class would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests. Defendants have acted in a manner applicable to the Class as a whole such that declaratory relief is warranted.

94.     Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Defendants' conduct was perpetrated on all members of the Class and will be established by common proof.

95.     Plaintiff's counsel is experienced in FDCPA class action litigation.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class defined above, and against Defendants, for:

    (1)  Statutory damages;

    (2)  Attorney's fees, litigation expenses and costs of suit;

    (3)  Such other and further relief as the Court deems proper.

16

## INDIVIDUAL COUNT

## COUNT III-DIRECT COMMUNICATION WITH A REPRESENTED CONSUMER

96.     Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

97.     Section 1692c of the FDCPA provides as follows:

**a) Communication with the consumer generally**

**Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –**

**(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;**

**(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or**

**(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.**

98.     Wirbicki, on behalf of Bayview, violated the FDCPA, 15 U.S.C. § 1692c(a)(2), when it sent a collection letter to Plaintiff when it knew that she was represented by an attorney.

99.     Plaintiff experienced emotional distress as the result of having received the First Letter, as she worried that she was no longer represented by an attorney and that she would

17

have to deal with the Defendants directly, which caused her fear, worry, loss of sleep, anxiety, and other negative effects and emotions.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants, for:

(1)  Statutory and actual damages;

(2)  Attorney's fees, litigation expenses and costs of suit;

(3)  Such other and further relief as the Court deems proper.

**JURY DEMAND**

Plaintiff demands trial by jury.

The Law Office of M. Kris Kasalo, Ltd.          By: s/ *Mario Kris Kasalo*
20 North Clark Street, Suite 3100               Mario Kris Kasalo
Chicago, Illinois 60602
tel 312.726.6160
fax 312.698.5054
mario.kasalo@kasalolaw.com

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: s/ *Mario Kris Kasalo*
Mario Kris Kasalo