**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KAI BANDELE,

Plaintiff,

v.

THE WIRBICKI LAW GROUP, LLC, and BAYVIEW LOAN SERVICING, LLC,

Defendants.

No. 20 C 4104

Judge Jorge L. Alonso

**MEMORANDUM OPINION AND ORDER**

After receiving two dunning letters, plaintiff filed this suit under the Fair Debt Collection Practices Act. Defendants move to dismiss. For the reasons set forth below, the Court grants in part and denies in part defendant Bayview Loan Servicing, LLC's motion to dismiss and denies defendant Wirbicki Law Group, LLC's motion to dismiss.

## I. BACKGROUND

The following facts are from plaintiff's complaint, which the Court takes as true.

Plaintiff took out a mortgage to purchase her home in Chicago but ultimately defaulted on that loan. Defendant Bayview Loan Servicing, LLC ("Bayview") is the mortgage servicer for plaintiff's mortgage loan. Bayview hired defendant Wirbicki Law Group, LLC ("Wirbicki") to file a foreclosure action.

Wirbicki filed the foreclosure action in May 2018. Plaintiff hired an attorney to represent her in the foreclosure action, and that attorney filed an appearance on her behalf. Because the attorney served a copy of the appearance on Wirbicki, both Wirbicki and Bayview knew that

plaintiff was represented by counsel. Notwithstanding this knowledge, Wirbicki mailed plaintiff two dunning letters, copies of which plaintiff attached to her complaint.

Specifically, on or about July 15, 2019, Wirbicki mailed the first letter to plaintiff. That letter stated, among other things:

> **July 15, 2019**
>
> **VIA 1st CLASS MAIL**
> Kai A. Bandele
> 7639 South Langley Avenue
> Chicago, IL 60619
>
> * * *
>
> Dear Sir or Madam:
>
> This letter is being sent to you pursuant to your recent request for pay off figures good through July 31, 2019. As of today, the amount necessary to pay off your loan in full good through July 31, 2019 is $144,931.44. However, it is likely that the amount necessary to pay off the loan on July 31, 2019 will be greater than this for a variety of reasons. These reasons may include such items as additional interest coming due, additional fees and costs being incurred in relationship to foreclosure or other litigation, or other charges allowed under the mortgage. Therefore, prior to tendering payment, you must contact our office to verify the amount owed, otherwise, the payment may be rejected as insufficient.
>
> As of today, $144,931.44 will be due on July 31, 2019. The attached breakdown indicates how that amount was calculated.
>
> * * *
>
> The information provided in this letter will be valid through 5:00 PM on July 31, 2019 and the amount may change if your payment is not received at the address below by that date and time. . . .
>
> * * *
>
> **An overage of fees and costs is unlikely because the amounts contained herein have already been incurred. However, if for any reason an overage exists after payment is received, it will be refunded to you. Be sure to return this letter with your funds and complete the information at the bottom of this letter.**
>
> * * *

**Pursuant to the Fair Debt Collection Practices Act, you are advised that this law firm is deemed to be a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.**

* * *

**PAY OFF BREAKDOWN**

| Item | Qty | Rate | Amt |
|---|---|---|---|
| Principal Balance | 1.00 | $114,928.98 | $114,928.98 |
| Interest | 1 | $7,633.21 | $7,633.21 |
| Late Charges | 1 | $451.50 | $451.50 |
| Foreclosure Costs | 1 | $2,151.47 | $2,151.47 |
| Foreclosure Fees | 1 | $5,905.00 | $5,905.00 |
| Escrow Advance | 1 | $13,786.28 | $13,786.28 |
| Dismissal Fees | 1 | $75.00 | $75.00 |
| Grand Total | | | $144,931.44 |

[Docket 1-1 at 2-4]. Plaintiff alleges that the letter confused her. She alleges that an "unsophisticated consumer would not know the amount that would be required to pay off the loan, though Bayview was required to provide an accurate payoff amount." (Complt. ¶ 45).

Plaintiff alleges Wirbicki mailed (Complt. ¶ 46) her a second letter on December 2, 2019. That letter states, among other things:

**December 2, 2019**
**VIA EMAIL ONLY**
Ebony Lucas
elucas@ plgesq.com

* * *

Dear Sir or Madam:

This letter is being sent to you pursuant to your recent request for reinstatement figures good through December 18, 2019. As of today, the amount necessary to reinstate your loan in full good through December 18, 2019 is $44,386.25. However, it is likely that the amount necessary to reinstate the loan on December 18, 2019 will be greater than this for a variety of reasons. These reasons may include such items as additional interest coming due, additional fees and costs being incurred in relationship to foreclosure or other litigation, or other charges allowed under the mortgage. Therefore, prior to tendering payment, you must contact our office to verify the amount owed, otherwise, the payment may be rejected as insufficient.

As of today, $44,386.25 will be due on December 18, 2019. The attached breakdown indicates how that amount was calculated.

* * *

The information in this letter will be valid through 5:00 PM on December 18, 2019 and the amount may change if your payment is not received at the address below by that date and time. . . .

* * *

**Any overage of fees and costs is unlikely because the amounts contained herein have already been incurred. However, if for any reason an overage exists after payment is received, it will be refunded to you. Be sure to return this letter with your funds and complete the information at the bottom of this letter.**

* * *

**Pursuant to the Fair Debt Collection Practices Act, you are advised that this law firm is deemed to be a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.**

* * *

**REINSTATEMENT BREAKDOWN**

| Item | Qty | Rate | Amt |
|---|---|---|---|
| Payments | 1 | $31,568.48 | $31,568.48 |
| Late Charges | 1 | $391.30 | $391.30 |
| Foreclosure Costs | 1 | $2,606.47 | $2,606.47 |
| Foreclosure Fees | 1 | $9,820.00 | $9,820.00 |
| Grand Total | | | $44,386.25 |

[Docket 1-1 at 6-8].

Defendant Bayview attached to its motion to dismiss a copy of plaintiff's mortgage.[1]

The mortgage provides, among other things:

[1] Defendant Bayview attached a copy of plaintiff's mortgage to its motion to dismiss. The Court may consider the copy defendant attached, because it is referred to in plaintiff's complaint and is central to plaintiff's claims. *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007); *see also Harrington v. Fay Servicing, LLC*, Case No. 18 C 6467, 2019 WL 4750140 at *3 n. 3 (N.D. Ill. Sept 30, 2019). Plaintiff does not object to the Court's consideration of the mortgage.

> **Definitions.** . . .
>
> **(C)** "*Lender*" is JP Morgan Chase Bank, N.A. . . .
>
> * * *
>
> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note . . .
>
> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

[Docket 12-1 at 3, 15]. On March 6, 2018, JPMorgan Chase Bank, N.A. assigned plaintiff's mortgage to Bayview. [Docket 12-2 at 2].

Based on these allegations, plaintiff filed a purported class-action complaint, in which she asserts claims for violation of the Fair Debt Collection Practices Act ("FDCPA"). Defendants move to dismiss.

## II. STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but

mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

## III. DISCUSSION

In Count I, plaintiff asserts that defendants violated the FDCPA § 1692e in sending the first letter, because the letter threatened late charges when the loan had already been accelerated but plaintiff had not sought reinstatement. Plaintiff alleges the letter constituted a threat to take action that could not legally be taken and constituted false, deceptive or misleading representations. In Count II, plaintiff asserts that the first and second letters were false, deceptive or misleading in how they described the amount due for payoff (in the first letter) or reinstatement (in the second). Specifically, plaintiff alleges she was confused that the letters said a specific amount was valid through a date certain and then said the amount might change on that date certain. In Count III, plaintiff asserts defendants violated the FDCPA by sending plaintiff the first letter despite knowing that plaintiff was represented by counsel.

### A. Consent

In Count III, plaintiff asserts that defendants violated § 1692c(a) of the FDCPA when "Wirbicki, on behalf of Bayview" sent the first letter to plaintiff.[2] That section provides:

> *Without the prior consent of the consumer* given directly to the debt collector or the express permission of a court of competent jurisdiction, *a debt collector may not communicate with a consumer* in connection with the collection of any debt---
>
> * * *
>
> (2) *if the debt collector knows the consumer is represented by an attorney* with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time or unless the attorney consents to direct communication with the consumer[.]

15 U.S.C. § 1692c(a) (emphasis added). Plaintiff alleges defendants knew plaintiff had an attorney before sending the first letter to her directly.

Defendants move to dismiss this count, arguing that plaintiff pleaded herself out of court on this claim by attaching a document that proves she consented. Specifically, defendants point to the first letter itself, which plaintiff attached to the complaint. The first letter (written by defendant Wirbicki) states, among other things, "This letter is being sent to you pursuant to your recent request for pay off figures[.]" [Docket 1-1 at 2]. Defendants argue that plaintiff has, by attaching the letter, admitted the truth of each of defendant's statements within that letter.

The Court does not agree with defendants that plaintiff, by attaching the letter, has admitted the truth of every statement defendant included in the letter. It is clear that plaintiff attached the letter in support of her FDCPA claims. She attached the letter to show the letter was sent to her and to show the language she alleges violated the FDCPA. The Court agrees that it

[2] Although plaintiff alleges Wirbicki mailed plaintiff two dunning letters (Compl. ¶¶ 22, 46), plaintiff alleges in Count III that only the first letter was sent in violation of 15 U.S.C. § 1692c(a), perhaps because the second letter was sent by email to plaintiff's counsel [Docket 1-1 at 6].

may consider each letter in its entirety when considering whether the language violates the FDCPA. What the Court will not do is assume the truth of every fact *defendant* included in those letters. *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) ("To conclude, summarily, however, that letters written by [defendant] represent the truth with regard to the defendants' intent simply because [plaintiff] attached them to its complaint for reasons unrelated to their truthfulness is inappropriate. Rather than accepting every word in a unilateral writing by a defendant and attached by a plaintiff to a complaint as true, it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents."); *see also Otis v. Demarasse*, 886 F.3d 639, 646-47 (7th Cir. 2018) ("[I]n assessing the propriety of dismissal of a complaint, our cases urge particular caution when a plaintiff attached a document authored by defendant. . . . A district court should determine whether considering the particular documents in substance is appropriate."); *Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004) ("[Plaintiff] had appended the board's decision not in order to vouch for the truth of the statements in it, but to show that he had exhausted his administrative remedies."). In *Northern Indiana*, the Seventh Circuit explained:

> [C]ourts should also consider the type of document in which the statement is being made and for what purpose the document is being offered. For example, a written contract represents an agreement between the parties. Letters written by the defendant, however, may contain self-serving statements not constrained by negotiations. . . . [I]t would be unwise to accept these unilateral statements as explaining the entire story at this early point in the litigation. . . . People's motivations may not always be what people say they are. . . . Although plaintiffs should exercise care in attaching documents to complaints, we do not believe they should be forced to accept as true every statement made within documents that do not by their nature imply some level of credibility.

*Northern Indiana*, 163 F.3d at 456.

The first dunning letter does not, by its nature, imply credibility, and plaintiff was not vouching for the facts defendant included therein when she attached it to show that the letter was

sent to her and to show the language she claims violates the FDCPA. She has not, by attaching it, admitted the truth of defendant's statement in the letter that the letter was solicited. She has not admitted that she consented to the letter. The Court will not dismiss Count III on this basis at the 12(b)(6) stage.

**B. Notice and cure**

Defendants argue that plaintiff's claims must be dismissed, because plaintiff has failed to allege that she gave notice and allowed a reasonable time for corrective action.

Plaintiff's mortgage contained a notice-and-cure provision, which states:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) *that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached* any provision of, or *any duty owed by reason of, this Security Instrument*, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

[Docket 12-1 at 15] (emphasis added). Courts in this district have concluded that nearly-identical notice-and-cure provisions required the dismissal of certain FDCPA claims. *Rodriguez v. Rushmore Loan Mgt. Services, LLC*, Case No. 18-cv-1015, 2019 WL 423375 (N.D. Ill. Feb. 4, 2019); *see also Wortman v. Rushmore Loan Mgt. Service, LLC*, Case No. 19 C 2860, 2019 WL 5208893 (N.D. Ill. Oct. 16, 2019); *Michael v. CitiMortgage, Inc.*, Case No. 16-cv-7238, 2017 WL 1208487 (N.D. Ill. April 3, 2017).

In *Rodriguez*, the plaintiff made claims similar to this plaintiff's Count I. There, the plaintiff alleged defendant violated the FDCPA by threatening to impose late fees that could not legally be imposed, because the mortgage had been accelerated and plaintiff had not asked for it to be reinstated. *Rodriguez*, 2019 WL 423375 at *2. This is just what plaintiff alleges in Count I. In *Rodriguez*, Judge Dow concluded that, even though the parties disagreed over whether the

late fees were allowed under the mortgage, the "dispute nonetheless 'arises from' action that Defendant purportedly took pursuant to the Mortgage—in particular, adding late fees to the amount that Defendant told Plaintiff would be due if Plaintiff were to bring her mortgage current." *Rodriguez*, 2019 WL 423375 at *3. Just so here. Count I arises from Bayview's action pursuant to the mortgage.

Counts II and III, however, are different. Defendants do not bother explaining why these claims would require notice, and the Court does not see why they would. In Count III, plaintiff alleges defendants violated the FDCPA by sending a letter to a consumer represented by counsel. That claim arose from a duty imposed by the FDCPA, not from the mortgage. *See Rodriguez*, 2019 WL 423375 at *4 ("The duty to refrain from communicating with a consumer who is represented by an attorney came from the FDCPA, not the mortgage."). In Count II, plaintiff alleges defendant made false and misleading statements in how it described the amount due. Specifically, plaintiff takes issue with defendant's statements that the payment amount was good through a certain date but also that it might change on that date. Count II, too, arises from duties under the FDCPA and did not require notice under the notice-and-cure provision.

As plaintiff points out, the notice-and-cure provision applies only to suits against the Lender. It is clear that Bayview counts as Lender. The mortgage defined Lender [Docket 12-1 at 3] as JP Morgan Chase Bank, N.A., which assigned the mortgage to Bayview on March 6, 2018 [Docket 12-2 at 2], as it was allowed to do under the mortgage [Docket 12-1 at 15]. At that point, Bayview became the Lender and was entitled to notice. Because plaintiff has not alleged that she gave such notice, Count I is dismissed without prejudice as to Bayview.

As plaintiff also points out, defendant Wirbicki (who did not file its own brief but instead merely adopted Bayview's) has not explained why the notice-and-cure provision would apply to

claims against it. Accordingly, the Court will not dismiss Count I against Wirbicki on the basis of the notice-and-cure provision at this time.

### C. *Rizzo*

In Count I, plaintiff asserts that defendants violated the FDCPA § 1692e in sending the first letter, because the letter threatened late charges when the loan had already been accelerated and when plaintiff had not sought reinstatement.

Defendant cites *Rizzo v. Pierce & Assoc.*, 351 F.3d 791 (7th Cir. 2003) and argues that late charges could be assessed in the event a mortgage was reinstated after acceleration. In *Rizzo*, the Seventh Circuit concluded that defendant had not violated the FDCPA by charging late fees for past-due payments on an accelerated mortgage after reinstatement, because the mortgage allowed those fees to be charged in the event of reinstatement. *Rizzo*, 351 F.3d at 794. Here, though, plaintiff's claim is that defendants threatened to charge late fees after acceleration even though plaintiff did *not* ask to have the mortgage reinstated. Defendants have not convinced the Court that Count I should be dismissed on this basis.[3]

[3] Defendants also argue that plaintiff's mortgage allowed the fees not just in connection with reinstatement but also in connection with payoff. Defendants do not, however, identify any language in the mortgage to support the argument, and it is not this Court's job to search the record to find support for a party's argument. Defendants can try this argument again at the summary judgment stage. The Court notes, too, that arguments made for the first time in a reply briefed are waived.

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendant Bayview's motion [11] to dismiss. The Court dismisses without prejudice Count I against Bayview. The Court denies defendant Wirbicki's motion [25] to dismiss. Plaintiff is granted until June 14, 2021 to file an amended complaint should she so choose. Defendants' deadline to answer or otherwise plead is July 6, 2021. This case is set for status on July 7, 2021 at 9:30 a.m.

SO ORDERED.

ENTERED: May 25, 2020

JORGE L. ALONSO
United States District Judge